**Doris HERNANDEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 3–88–028–CR.**

Court of Appeals of Texas,
Austin.

April 5, 1989.

Geoffrey A. FitzGerald, Temple, for appellant.

Jan Alan Behr, Asst. Co. & Dist. Atty., Cameron, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

PER CURIAM.

This is an appeal from an order revoking probation. In February 1986 a jury found appellant, Doris Jane Hernandez, guilty of theft. Tex.Pen.Code Ann. § 31.03(a), (b)(1) (1989). Punishment was assessed by the trial court at imprisonment for ten years, probated, with restitution in the amount of $38,000. Included among the conditions of probation was the standard requirement that appellant not violate any of the penal laws of this State. On November 24, 1987, the prosecutor filed his first amended mo-

tion to revoke appellant's probation on the ground she had again committed theft. The motion alleged in relevant part that:

on or about the 28th day of April, 1987, in the County of Milam ... Doris Hernandez did ... unlawfully appropriate property by exercising control over ... 274 feet of six (6) foot ... fence ... of the value of more than $750 ... from Bill Rhodes without the effective consent of Bill Rhodes, the owner thereof and with the intent to deprive the owner of said property.

A hearing on the motion was held before the trial court on January 15, 1988. Franklin William (Bill) Rhodes testified that he is the loan officer for First Taylor National Bank in Taylor; that pursuant to a deed of trust transaction in January 1985, the bank became the mortgagee, and Lynn and Mary Yocham the mortgagors, of a house located at 1004 Clement Street in Thorndale; that at that time the house had no fence; that at some unspecified time before April 1987 the Yochams became delinquent in their mortgage payments; that shortly thereafter he learned that appellant (Mary Yocham's sister) and her husband were residing in the house; that he instructed them to leave and they did so in April 1987; that before they left the house had a fence, but that after they left the fence was gone; that "[a]t the time [he] saw the fence, [the bank] had a lien on the property"; that no one at the bank gave appellant permission to remove the fence; and that on an unspecified date, the bank foreclosed on the property in question.

Ron DeLuey testified that he is a fence builder in Taylor; that at Rhodes' request, he inspected the property and discerned what type of fence had been there; and that such a fence, even in used condition, had a value more than $750.

Finally, Milam County Deputy Sheriff Thomas Harris testified that he spoke with appellant sometime after the motion to revoke was filed:

Q. Did she, in fact, come to the Sheriff's Office while you were present?

A. Yes, she did.

Q. While she was there, did you ask her any questions or did she simply volunteer some information?

A. She just volunteered. Basically, she just told me that she felt the County Attorney's office was picking on her and that the property was—you know —their's [sic].

Q. And did she acknowledge that she had taken the property?

A. Well, she said that yes, the reason they had taken the property was that it was theirs, they had paid to have it put up and that's the reason they had taken it.

Q. Independent of that, did her husband also—first of all, do you know her husband?

A. Yes, sir. I do.

Q. Did he make a similar admission to you that they had taken the property alleged?

A. This was when I started the investigation after I was contacted by the bank in Taylor. I called Mr. Hernandez, or I first went by his office to talk to he and Doris and they weren't in and I asked the gentleman there to ask them if they would call me and Ralph called me later and I told him that I was investigating a theft that had been reported by the First Taylor National Bank of some fencing and fixtures in the house and Ralph at that time told me that they had taken the stuff and that the reason they had taken it was because it was theirs, they had paid to have it put up and it belonged to them and I think I put that in my report that I sent to your office.

Q. So, both Ralph Hernandez and Doris Hernandez on two independent occasions acknowledged to you that they had taken the fencing and fixtures and some built-in appliances or appliance?

A. Yes, I think maybe specifically I asked about the fencing, but yes, that's what they said, that it was their property and they had taken their property.

.    .    .    .    .

Q. And you figure probably the fence came up when you were talking to her and Ralph both?

A. I think that's what we were talking about. It was my impression that the fencing was of the largest value, or whatever and that's why I had asked about it when I talked to Ralph and I know that's what he was talking about.

Q. You don't particularly remember asking her about the fence, do you?

A. No, sir. I didn't ask her about that.

Q. So, what you have to tell us about Doris is that she didn't admit stealing anything. Right?

A. No, she didn't admit stealing anything, she said that the property they had taken was theirs and they had bought and paid for it.

Q. Whatever property she was talking about, you and she never did nail down what you both meant?

A. Well, that's correct.

Q. So, you're not here to tell us that she admitted stealing the fence or even taking the fence, are you?

A. No. To me, it was implied that's what she was talking about since that's what she was being charged with.

Q. Sure, but as far as anything in plain English, she didn't even admit to taking the fence, did she?

A. No, she didn't come out and say I took the fence or anything of that nature. No, sir.

Q. And when you gave us a summary of her testimony based upon your memory of her a few months back, the words you used were "we took." Right?

A. Right.

Q. She didn't ever say I did anything, did she?

A. No, I took it to mean her and Ralph.

On January 29, 1988, the trial court revoked appellant's probation and sentenced her to imprisonment for ten years. On February 24, 1988, the trial court made the following findings and conclusions:

## FINDINGS OF FACT

   •    •    •    •    •

4. Doris Hernandez violated the penal code of the State of Texas on or about April 28, 1987, in Milam County, Texas by unlawfully appropriating 274 feet of a six foot wooden privacy fence and 64 feet of a four foot chain link fence from the owner, Bill Rhoades, without the effective consent of Bill Rhoades [1], the owner, and at the time of the unlawfull [sic] appropriation intended to deprive Bill Rhoades of the property permanently.

5. The 274 foot length of six foot wooden privacy fence had a value in excess of $750.00.

6. The 64 feet of four foot chain link fence was of some value.

   •    •    •    •    •

8. The property made the subject of the State's Motion to Revoke probation constituted the collateral for a bank loan made by the First Taylor National Bank and said loan was secured by a Deed of Trust which created a lien on the subject property.

9. Both the six foot wooden privacy fence and the four foot chain link fence were placed on the real estate (owned of record by the Yochums and was in place before foreclosure proceedings were begun by the First Taylor National Bank.

10. The fencing, both the six foot wooden privacy fence and the four foot chain link fence was permanently attached to the real estate.

11. The real estate, which was owned of record by the Yochums, was properly posted for foreclosure by Bill Rhoades of the First Taylor National Bank.

12. Prior to the foreclosure by the First Taylor National Bank the respondent, Doris Hernandez, her husband and others removed the six foot wooden privacy fence and the four foot chain link fence from the real estate without the permission of Bill Rhoades [sic], the First Taylor National Bank officer in charge of this loan and the property that constituted the collateral for the loan.

## CONCLUSIONS OF LAW

1. The six foot wooden privacy fence and the four foot chain link fence constituted personal property but was converted to real property when it was permanently attached to the real estate.[2]

2. The removal of the six foot wooden privacy fence and/or the four foot chain link fence constituted a violation of the criminal law.

   •    •    •    •    •

In her first point of error, appellant contends the trial court erroneously revoked her probation because the State failed to prove that Rhodes was the "owner" of the fence at the time of the taking. The State responds that "[s]ince the Yokum's had quit the property and First Taylor National Bank had foreclosed under its deed of trust, the bank became owner."

■ If the State seeks to revoke probation for violation of a penal statute, it must prove all the elements of the offense by a preponderance of the evidence. *Harrison v. State*, 626 S.W.2d 518 (Tex.Cr.App.1981); *Grant v. State*, 566 S.W.2d 954 (Tex.Cr. App.1978). The elements of theft as charged in the motion to revoke are: (1) a person (2) with intent to deprive the owner of property (3) unlawfully appropriates that property (4) without the effective consent of the owner. *Peterson v. State*, 645 S.W.2d 807 (Tex.Cr.App.1983). "Owner" means "a person who has the title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." Tex.Pen.Code Ann. § 1.07(a)(24) (1974). "Possession" is defined, in turn, as "actual care, custody, control, or management."

---

1. The surnames of Bill Rhodes and Lynn and Mary Yocham are variously spelled in the record and briefs as "Rhodes," "Rhoades," "Yocham," "Yochum," and "Yokum."

2. *See Logan v. Mullis*, 686 S.W.2d 605 (Tex. 1985).

Tex.Pen.Code Ann. § 1.07(a)(28) (1974). The definition of "owner" as used in the theft statute "excludes ... those who have a security interest in property in possession of the debtor, unless legal title is in the secured creditor pursuant to a conditional sales contract or other security agreement." Searcy and Patterson, Practice Commentary, 3 Tex.Pen.Code Ann. 17 (1989).

 The task of this Court is, then, to view all the evidence in the light most favorable to the trial court's ruling and determine whether any rational factfinder could have found that Rhodes was the "owner" *at the time of the taking. See Moreno v. State,* 755 S.W.2d 866 (Tex.Cr. App.1988); *Hill v. State,* 719 S.W.2d 199 (Tex.Cr.App.1986); *Freeman v. State,* 707 S.W.2d 597 (Tex.Cr.App.1986); *Garrett v. State,* 619 S.W.2d 172 (Tex.Cr.App.1981).

We conclude the answer is no. The trial court expressly found, based on adequate evidence, that appellant removed the fence *before* the foreclosure occurred. At that point the bank had only a non-possessory lien on the house. *See* M. Johnson & G. Irby, *Texas Real Estate Law* 462–467 (1988). The bank had a security interest, but it held no "title" and, so far as we can tell from the deed of trust (State's exhibit three), no right to possession whatsoever. *Robinson v. Smith,* 128 S.W.2d 27 (Tex. Comm.App.1939); *Carroll v. Edmondson,* 41 S.W.2d 64 (Tex.Comm.App.1931, holding approved); *Calvert v. Hanna,* 140 S.W.2d 976 (Tex.Civ.App.1940, no writ); *see* G. Nelson & D. Whitman, *Real Estate Finance Law* §§ 1.5 & 4.2 (1985). Point one is therefore sustained. Given our disposition of point one, we need not address points two through six.

The order of revocation is reversed and the cause remanded.