# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

EMMA B. CLARK,                          )
                                        )
      Plaintiff/Appellee,        ) Crockett Chancery No. 6878
                                        )
VS.                                     ) Appeal No. 02A01-9704-CH-00080
                                        )
RANDY J. PERRY,                         )
                                        )
      Defendant/Appellant.       )

FILED

March 19, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF CROCKETT COUNTY
AT ALAMO, TENNESSEE
THE HONORABLE GEORGE R. ELLIS, CHANCELLOR

S. JASPER TAYLOR, IV
Bells, Tennessee
Attorney for Appellant


L. L. HARRELL, JR.
HARRELL & HARRELL
Trenton, Tennessee
Attorney for Appellee

**REVERSED IN PART, AFFIRMED IN PART**

ALAN E. HIGHERS, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

HOLLY KIRBY LILLARD, J.

Defendant Randy J. Perry appeals the trial court's final judgment rescinding a deed executed by Plaintiff/Appellee Emma B. Clark, awarding Clark rents received by Perry during his possession of the subject property, enjoining Perry's lessee from entering the property, and ordering Perry to pay Clark's attorney's fees. With the exception of the award of attorney's fees to Clark, we affirm the trial court's judgment.

I. Factual and Procedural History

Clark brought this action to rescind a deed which she claimed Perry procured by misrepresentation and undue influence. At trial, the undisputed evidence established that in February 1993 Clark signed a warranty deed conveying to Perry a 123-acre farm in Crockett County. Although the farm was worth over $157,000, Perry paid Clark only $20,000 for the property. Within days of procuring the deed, Perry mortgaged the farm for over $100,000. Perry later took out a second mortgage on the farm for $20,000. At the time of trial, Perry still owed over $120,000 on these mortgages. After receiving the deed to the farm, Perry also began leasing the farm to another farmer, Stoney Hargett, who paid one-fourth of the annual farm income to Perry as rent. In May 1993, Perry conveyed back to Clark a life estate in a portion of the farm property which included the house in which Clark lived.

At trial, Perry testified that Clark conceived the idea of conveying the farm to Perry for a price of $20,000 and, further, that Clark knew what she was doing when she executed the warranty deed in Perry's favor. Since 1987, Perry had conducted farming operations on the subject property as Clark's lessee. At one point in their relationship, Clark allegedly promised to leave a portion of the farm to Perry and to sell him the rest. According to Perry, the conveyance in February 1993 was Clark's way of fulfilling this promise. In his testimony, however, Perry acknowledged that he arranged for the deed to be prepared and that the $20,000 purchase price was far below the property's fair market value, which exceeded $157,000. Perry also acknowledged that Clark was extremely dependent upon

2

him and that she trusted and relied upon him to do "whatever was right and proper concerning her."

Clark's version of events surrounding the transaction directly contradicted Perry's testimony. Clark, who was approximately eighty-one years old at the time of the conveyance, testified that she suffered from poor health in the months prior to and after execution of the deed. In 1992, Clark was hospitalized for nine weeks because she underwent gallstone surgery and, later, developed blood poisoning. When Clark was released from the hospital, she was confined to her home in poor health. Clark was visited by home health nurses, who provided Clark with medication and therapy. During this time, Clark was unable to leave her house without assistance. Clark was not well enough to care for herself again until sometime in the spring of 1994.

Clark had leased the farm to Perry since 1986 or 1987. She trusted Perry and considered him to be a friend. After Clark became ill in 1992, she relied on Perry to run errands for her, to provide transportation for her, and to take care of her home when she was not there. Clark also relied on Perry to handle any business matters relating to the farm. Clark had executed a limited power of attorney authorizing Perry to sign any paperwork required by the ASCS[1] office. While she was still in the hospital, Clark reimbursed Perry for some of his expenses incurred in handling her affairs, as well as for farm expenses. Clark trusted Perry sufficiently to ask him to fill out a couple of her personal checks for her signature.

On the day in question, Perry picked up Clark and transported her into Alamo, where she executed the deed in front of a notary public. Perry brought the papers outside, and Clark remained seated in Perry's truck while she signed the deed. In contrast to Perry's testimony, Clark testified that she did not realize that she was signing a deed to the farm. According to Clark, Perry led her to believe that she was signing some forms from

---

[1]Although the record is unclear, the parties may have been referring to the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture. See Dill v. Brinkley, 1988 WL 28561, at *2 n.1 (Tenn. App. Mar. 28, 1988).

the ASCS office. Clark previously had signed such forms for Perry and, thus, was not suspicious of Perry's request that day. When Perry tendered the $20,000 purchase price to Clark a number of days later, Clark thought that Perry was repaying a $5000 loan plus other amounts he owed her. Clark further maintained that she never intended to convey the farm to Perry. Except for the farm, Clark's only source of income was a monthly social security check in the amount of $351. For the years 1987 through 1991, Clark received income from the farm totaling $47,700.

Clark realized that something was wrong in the fall of 1993, when Perry failed to pay Clark her portion of the farm's annual crop income. Perry prevaricated when Clark first inquired about the income. Clark later discovered that Perry did not pay her any farm income because she had conveyed the farm to Perry. Clark pleaded with Perry to reconvey the property to her. According to Clark, Perry admitted that he had "done wrong." Instead of reconveying the property to Clark, however, Perry responded by telling Clark that she did not need the property and that she did not have long to live anyway. Clark offered to refund the $20,000 purchase price if Perry would reconvey the property, but Perry refused to accept Clark's check.

At the trial's conclusion, the trial court entered an order rescinding the deed to the farm based on the court's finding of overreaching, fraud, and deceit. The trial court's order also awarded Clark $5,000 plus interest for a loan she previously made to Perry, directed Perry to pay all mortgages and encumbrances that he had placed upon the property, and ordered Perry to pay Clark's attorney's fees.

After entry of the trial court's order rescinding the deed, Clark filed a motion to alter or amend the order in which she sought an additional judgment for rents and income received by Perry during the time he held title to the property. Clark also filed a petition for a restraining order seeking to enjoin Perry and his lessee, Stoney Hargett, from going upon the property. The petition alleged that Perry and Hargett recently had entered the property and had begun making preparations to cultivate and farm the property. Perry filed a written

4

response to Clark's motion in which he sought credit for the $20,000 purchase price that he had paid for the property, as well as reimbursement for funds that he had expended in improving the property.

After conducting evidentiary hearings on Clark's post-trial motion and petition, the trial court entered a restraining order which enjoined Perry and Hargett from going upon Clark's property. The trial court also entered a final judgment which, in addition to the court's previous rulings, awarded Clark $25,516.13 for rents received by Perry during the years 1993, 1994, and 1995. The trial court gave Perry a credit of $20,000 against this amount, for a net judgment of $5,516.13. The court ruled that Perry was not entitled to reimbursement for any expenses he incurred either while he was leasing the property from Clark or after he received a deed to the property. Finally, the trial court ordered Perry to pay Clark's attorney's fees in the amount of $10,000.

On appeal, Perry contends that the trial court erred in rescinding the deed to the farm based on the court's finding of overreaching and fraud; in failing to award Perry the expenses he incurred in farming and making improvements to the property; in issuing a restraining order against Perry's lessee, Stoney Hargett; and in ordering Perry to pay Clark's attorney's fees.

## II. Rescission of Farm Deed

The doctrine of undue influence applies "when one party, such as a grantee, is in a position to exercise undue influence over the mind and the will of another, such as a grantor, due to the existence of a confidential relationship." Brown v. Weik, 725 S.W.2d 938, 945 (Tenn. App. 1983). A grantor seeking to rescind a deed based on this doctrine has the burden of proving (1) that a confidential relationship existed between the parties wherein the grantee was the dominant party, and (2) that the transaction conferred a benefit on the grantee. Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995); Fritts v. Abbott, 938 S.W.2d 420, 421 (Tenn. App. 1996); Williamson v. Upchurch, 768 S.W.2d

5

265, 269 (Tenn. App. 1988); Parham v. Walker, 568 S.W.2d 622, 624 (Tenn. App. 1978). Once the grantor proves these elements, a presumption arises that the deed was procured by undue influence. Brown v. Weik, 725 S.W.2d at 945; Parham v. Walker, 568 S.W.2d at 624. The burden then shifts to the grantee to prove, by clear and convincing evidence, that the transaction was fair and was not the result of undue influence. Matlock v. Simpson, 902 S.W.2d at 386; Brown v. Weik, 725 S.W.2d at 945; Parham v. Walker, 568 S.W.2d at 624. If the grantee fails to carry this burden, the transaction is presumed void. Parham v. Walker, 568 S.W.2d at 624.

Confidential relationships can assume a variety of forms. Mitchell v. Smith, 779 S.W.2d 384, 389 (Tenn. App. 1989). Accordingly, courts have been hesitant to provide a precise definition for the term "confidential relationship." Id.; accord Williamson v. Upchurch, 768 S.W.2d at 269; Brown v. Weik, 725 S.W.2d at 945. Generally, a confidential relationship includes any relationship of trust and confidence which gives one party dominion or influence over the other. Mitchell v. Smith, 779 S.W.2d at 389; Williamson v. Upchurch, 768 S.W.2d at 269. More specifically, a confidential relationship is one "where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party." Iacometti v. Frassinelli, 494 S.W.2d 496, 499 (Tenn. App. 1973); accord Mitchell v. Smith, 779 S.W.2d at 389; Williamson v. Upchurch, 768 S.W.2d at 269; Gustafson v. Baldridge, No. 02A01-9102-CV-00009, 1991 WL 248410, at *3 (Tenn. App. Nov. 27, 1991).

Although courts have avoided a precise legal definition for the term "confidential relationship," they have discussed the type of evidence which will support the existence of a confidential relationship:

> Evidence of one party's deteriorated mental or physical condition will substantiate the existence of a confidential relationship as well as the ability of the dominant party to influence the weaker party. . . . The weaker party need not be legally insane. . . . Any condition rendering the weaker party

6

> unable to guard against the dominant party's imposition or
> undue influence is sufficient. . . .
>
> Thus, the question to be answered is not whether the
> weaker party's decision was a good one, or even whether he
> knew what he was doing at the time. In these cases, the
> courts must determine whether the weaker party's decision
> was a free and independent one or whether it was induced by
> the dominant party.

Williamson v. Upchurch, 768 S.W.2d at 270 (citations omitted); accord Fritts v. Abbott, 938

S.W.2d at 421; Barham v. Cooper, No. 02A01-9608-CH-00200, 1997 WL 542922, at *6

(Tenn. App. Sept. 5, 1997). Stated another way,

> there must be a showing that there were present the elements
> of dominion and control by the stronger over the weaker, or
> there must be a showing of senility or physical and mental
> deterioration of the donor or that fraud or duress was involved,
> or other conditions which would tend to establish that the free
> agency of the donor was destroyed and the will of the donee
> was substituted therefor.

Kelly v. Allen, 558 S.W.2d 845, 848 (Tenn. 1977); accord Fritts v. Abbott, 938 S.W.2d at

420-21.

After carefully reviewing the record, we conclude that the evidence supports the trial

court's finding that Perry procured the deed to Clark's farm by overreaching, fraud, and

deceit. At trial, Perry acknowledged that Clark trusted and depended on him to act in her

best interest. This dependence increased after Clark was hospitalized in 1992.

Thereafter, Clark trusted and depended on Perry, not only to handle matters relating to the

farm property he leased from Clark, but also to run errands for Clark, provide her with

transportation when needed, and maintain her home in her absence. Moreover, the

evidence demonstrated that, from the time of her hospitalization in 1992 until after she

signed the subject deed in 1993, Clark's mental and physical condition were weakened as

a result of her age and illness. Clark's own testimony concerning her condition was

corroborated by neighbors and home health care workers, who testified that Clark became

forgetful, needed assistance in caring for herself, and was unable to understand business

matters. Finally, Clark's testimony concerning the circumstances surrounding the

transaction indicated that Perry misled Clark and did not reveal to her the true nature of the

documents she was signing. Under these circumstances, we affirm the trial court's order rescinding the deed to the farm property.

We recognize that the parties testified to directly conflicting accounts of the events surrounding the transaction in question;[2] however, the existence of a confidential relationship and the exercise of undue influence are questions of fact. Fritts v. Abbott, 938 S.W.2d 420, 421 (Tenn. App. 1996). Accordingly, our review of these issues is de novo upon the record, accompanied by a presumption that the trial court's findings are correct unless the evidence preponderates otherwise. Id.; T.R.A.P. 13(d). The presumption of correctness afforded the trial court's findings is particularly important where, as here, the court is called upon to resolve directly conflicting testimony based upon the court's evaluation of the witnesses' credibility. In a similar case involving a claim of undue influence, this court stated:

> Much of the evidence presented to the chancellor was disputed. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and demeanor of the witnesses.

Ivey v. McAlexander, No. 02A01-9210-CH-00287, 1993 WL 330996, at *6 (Tenn. App. Sept. 1, 1993) (citing Tenn-Tex Properties v. Brownell-Electro, Inc., 778 S.W.2d 423 (Tenn. 1989)).

In affirming the order of rescission, we reiterate that Perry could have rebutted Clark's claim of undue influence by presenting clear and convincing proof of the transaction's fairness. Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995). Specifically, Perry could have introduced evidence that he made a full and frank disclosure of all relevant information within his possession, that he paid an adequate consideration

---

[2] With regard to the existence of a confidential relationship, however, we note that the nature of the parties' relationship and, specifically, the degree of trust which Clark placed in Perry really were not disputed in this case.

for the property, or that Clark had the benefit of independent advice prior to conveying the property to Perry. Barham v. Cooper, No. 02A01-9608-CH-00200, 1997 WL 542922, at *6 (Tenn. App. Sept. 5, 1997). The record shows, however, that Perry failed to prove the existence of any of these factors. Although Perry maintained that it was Clark's idea to convey the property to Perry, Clark testified that Perry failed to inform her that she was signing a deed to the farm and that he even misled her into believing that she was signing routine ASCS forms. It was undisputed that Perry paid only $20,000 for a piece of property worth $157,000. It also was undisputed that Perry was responsible for preparing the deed to the farm, and there was no evidence that Clark ever received advice from an independent source concerning the significance or advisability of the transaction. Except for the notary public who witnessed the transaction, no third parties even became aware of the transaction until after its completion. And, although the notary public testified that Clark appeared to know what she was doing, he also indicated that no discussions concerning the nature of the document or the significance of the transaction occurred in his presence.

### III. Perry's Claims for Reimbursement for Farm Expenses and Improvements

We also affirm the trial court's decision to deny Perry's request to be reimbursed for improvements that Perry allegedly made to the farm after the conveyance, as well as for expenses Perry incurred when he still was leasing the farm from Clark. At a post-trial hearing, Perry testified that, after he acquired the property, he spent $2,858.53 to have silt basins constructed which, he claimed, increased the property's value. Perry failed to establish, however, whether, or by how much, this work actually increased the value of the farm property. There was no evidence that the property's value had changed since the February 1993 conveyance, when it was appraised at $157,587.50. Moreover, at trial Perry's lessee, Stoney Hargett, testified that under their lease agreement Hargett, and not Perry, was responsible for paying all farm expenses.

9

Perry's other claim for expenses was based on the terms of the oral lease agreement which existed between the parties prior to Perry's acquisition of the farm. Under their oral lease, Clark was required to reimburse Perry for one-third of the expenses he incurred in farming the property. In exchange, Clark was entitled to one-third of the farm's annual income. At trial, Perry claimed that Clark had failed to pay her share of expenses.

Again, we affirm the trial court's ruling with regard to this issue. Although Perry testified to the amounts allegedly expended by him and owed by Clark, Perry acknowledged that he was relying upon his memory and that he had no documentation to substantiate his claim for expenses. Perry further acknowledged that, during the years he leased the farm from Clark, he never provided Clark with an accounting of his expenses, nor did he ever give her a statement showing any amounts due. Each year, Perry paid Clark one-third of the farm's income without deducting any farm expenses. In fact, when questioned by Clark's attorney at trial, Perry agreed that Clark had paid all of the expenses which she owed him:

> Q. Well, now, what are you claiming that you have not been specifically paid for, if anything?
>
> A. I don't say she owes me anything if that's what you're asking, sir.
>
> Q. As far as from the financial bookkeeping standpoint, you're saying that she has paid you everything that she would have owed you for?
>
> A. Yes, sir.

Based on the foregoing evidence, the trial court properly rejected Perry's claim that Clark still owed him for farm expenses.[3]

---

[3]Although Clark did not raise this as a separate issue on appeal, she argued in her answer brief that the trial court additionally should have awarded her $5,300 for amounts she paid to Perry during her hospitalization. Based on the evidence presented, however, the trial court could have found that these amounts represented reimbursement for farm expenses and for other expenses Perry incurred on Clark's behalf. Accordingly, we decline to disturb the trial court's ruling on this issue.

## IV. Issuance of Restraining Order Against Perry's Lessee, Stoney Hargett

At the hearing on Clark's petition for a restraining order, Perry stated that he had no objection to being enjoined from going onto Clark's property. Perry's lessee, Stoney Hargett, also was given notice of and participated in the proceedings on Clark's petition. The restraining order subsequently issued by the trial court enjoined both Perry and Hargett from going onto Clark's property. In light of Perry's stipulation at the hearing below, on appeal Perry challenges the trial court's issuance of the restraining order only to the extent that the order enjoins Hargett from entering Clark's property.

As an initial matter, we question whether Perry has standing to appeal the restraining order as it pertains to Hargett. Only a party aggrieved by the trial court's order may appeal and obtain review of that order. Ray v. Trapp, 609 S.W.2d 508, 512 (Tenn. 1980); Koontz v. Epperson Elec. Co., 643 S.W.2d 333, 335 (Tenn. App. 1982). A party is "aggrieved" when he has an interest recognized by law which is injuriously affected by the order, or when his property rights or personal interests are directly affected by operation of the order. Koontz, 643 S.W.2d at 335. As a general rule, therefore, a party lacks standing to appeal an order entered against a co-party who has elected not to appeal that order. See, e.g., Ray v. Trapp, 609 S.W.2d at 511-12; Ryan v. Stanger Inv. Co., 620 S.W.2d 505, 508 (Tenn. App. 1981). Here, Perry is attempting to appeal an order entered against his co-defendant in the injunction proceeding below when that party, Hargett, has elected not to appeal the order. Although Perry also was aggrieved by the trial court's restraining order, he consented to and has not appealed that portion of the court's order which enjoins him from entering Clark's property.

Even if he did have standing, we still would reject Perry's appeal of this issue because he has cited no legal authority for reversing the trial court's restraining order. See Ellison v. Alley, 902 S.W.2d 415, 417 (Tenn. App. 1995); Chambers v. Chambers, 1986 WL 1249, at *2 (Tenn. App. Jan. 29, 1986), perm. app. denied (Tenn. Apr. 21, 1986); T.R.A.P. 27(a)(7). Perry complains that "[t]he issuance of the restraining order puts [Perry]

in the position of being liable to [Hargett] for breach of the lease as well as for expenses incurred by [Hargett]." Not only is this argument unsupported by any legal citation, but we fail to see how this contention relates to the issue of whether Hargett was wrongfully enjoined from entering Clark's property.

## V. Award of Attorney's Fees

Despite our affirmance of the trial court's judgment in this case, we find it necessary to reverse the award of attorney's fees made to Clark. As Perry correctly argues on appeal, the prevailing party in a civil lawsuit may not recover her attorney's fees in the absence of statutory authority, a contractual provision, or a recognized equitable ground. Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985); Owen v. Stanley, 739 S.W.2d 782, 788 (Tenn. App. 1987), overruled on other grounds by Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995); State ex rel. Shelby County Election Comm'n v. Shelby County Bd. of Comm'rs, 656 S.W.2d 9, 9 (Tenn. App. 1983). In this case, Clark cites no statutory, contractual, or equitable ground for her recovery of attorney's fees. Noting that her complaint requested punitive damages, Clark instead contends that the trial court properly awarded her attorney's fees as punitive damages.

We conclude that this contention is not supported by the record. Our supreme court has restricted "the awarding of punitive damages to cases involving only the most egregious of wrongs." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992); accord Genesco, Inc. v. Scolaro, 871 S.W.2d 487, 492 (Tenn. App. 1993). The trial court's imposition of punitive damages requires a concurrent finding, by clear and convincing evidence, that the defendant acted intentionally, fraudulently, maliciously, or recklessly. Hodges, 833 S.W.2d at 901-02. Although the trial court in this case found that Perry procured the deed to Clark's farm by overreaching, fraud, and deceit, the court failed to find, by clear and convincing evidence, that Perry's wrongful conduct was sufficiently egregious to justify an award of punitive damages. Moreover, the record contains no

12

suggestion that the trial court intended to award punitive damages when it ordered Perry to pay Clark's attorney's fees.

## VI.  Conclusion

The award of attorney's fees is hereby reversed.  In all other respects, the trial court's judgment is affirmed.  Costs on appeal are taxed to Perry, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.