**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed July 18, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00485-CV

---

## BRAZORIA COUNTY IMAGING CENTER, LLC; ROBERT D. NEIDERT; AND ROBERT S. NEIDERT, Appellants

### V.

## CELESTE INVESTMENT GROUP ANGLETON, LLC, Appellee

---

**On Appeal from the County Court at Law No. 2 and Probate Court
Brazoria County, Texas
Trial Court Cause No. CI59483**

---

## M E M O R A N D U M   O P I N I O N

In this commercial-lease dispute, the lessee in a commercial lease—a limited liability company—and two of its members appeal the trial court's judgment based on tort and breach-of-contract claims asserted by the lessor. Because the trial court erred in awarding reasonable and necessary attorney's fees based on evidence that did not segregate fees between claims for which attorney's fees are recoverable

and claims for which attorney's fees are not recoverable, we reverse the trial court's award of attorney's fees and remand for further proceedings limited to attorney's fees. Except as to the attorney's fee award, the appellants have not shown error in the judgment. Therefore, we affirm the remainder of the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/defendant Brazoria County Imaging Center, LLC ("Brazoria Imaging") entered into a two-year lease as the Tenant with Old Ash Square, LLC, the then owner, pursuant to which Brazoria Imaging leased a 2,000 square foot storefront in a strip center in Angleton, Texas, for use as an MRI facility ("Lease"). Under the Lease, Brazoria Imaging, a Texas limited liability company, was the only entity obligated as the Tenant, and no other person was a guarantor.[1] Appellant/defendant Robert D. Niedert ("Bob") and his son, appellant/defendant Robert S. Niedert ("Robert") own a combined sixty-percent interest in Brazoria Imaging; the remaining owners were doctors. Bob and Robert were each a managing member of Brazoria Imaging who ran its day-to-day business. Appellee/plaintiff Celeste Investment Group Angleton, LLC ("Celeste") bought the building in which the Leased Premises were located. Celeste assumed the Lease and took Old Ash Square's place as Landlord under the Lease.

Brazoria Imaging determined that its business in Angleton was no longer viable and that it needed to close this MRI facility. Brazoria Imaging did not pay the rent for December 2018 by December 5, 2018, as required under the Lease. Brazoria Imaging had paid off the purchase money lien on its MRI machine at the Leased Premises before December 2018. Evidence at trial showed that while

---

[1] The Lease lists Brazoria Imaging as the "Guarantor," but Brazoria Imaging is already liable as the Tenant under the Lease.

Brazoria Imaging was in default under the Lease, (1) Brazoria Imagining removed all of its property from the Leased Premises on December 11, 2018, except for the MRI machine, and (2) on December 12, 2018, a contractor removed the MRI machine from the Leased Premises and transported it to an MRI facility in College Station, Texas. The facility in College Station was operated by Texas MRI Partners LLC, to whom Brazoria Imaging had sold the MRI machine for between $90,000 and $100,000. Evidence at trial showed that the contractor damaged the Leased Premises during the removal of the MRI machine.

Deepak Chandwani, the managing member and corporate representative of Celeste testified at trial that on December 17, 2018, Bob called him on the phone and told him that Brazoria Imaging had vacated the Leased Premises, and that Brazoria "no longer had the financial means to pay anything and they had walked out of the building." According to Chandwani, prior to that phone call he had no indication that Brazoria Imaging was vacating the Leased Premises, and Brazoria Imaging did not give Celeste notice that Brazoria Imaging would be removing the MRI machine from the Leased Premises. Chandwani testified that Brazoria Imaging claimed that it had paid the rent for December 2018, and in response, Chandwani showed Brazoria Imaging records reflecting that Brazoria Imaging had not paid the rent for that month. Chandwani contends that when he did not receive the rent payment or an acknowledgment from Brazoria Imaging that it had not paid the rent, Celeste had the locks changed on the Leased Premises on December 19, 2018. According to Chandwani, Brazoria Imaging then agreed that it had not paid the rent for December 2018 and paid this rent. Chandwani testified that Bob and Robert made various representations, and based on these representations, Chandwani gave Brazoria Imaging the new key so that Brazoria Imaging could access the Leased Premises.

3

Bob testified that Brazoria Imaging sold all of its remaining assets and that Brazoria Imaging used the money it received from selling the MRI Machine to pay for the move out of the Leased Premises and to pay its remaining bills. According to Bob, when Celeste changed the locks to the Leased Premises on December 19, 2018, Brazoria Imaging had already terminated its employees and had removed all of Brazoria Imaging's property from the Leased Premises. Bob testified that the only reason Brazoria Imaging sought the new key to regain access to the Leased Premises was to remove a water cooler that had been left there that belonged to a third party, and thus Brazoria Imaging returned the new key to Celeste after removing the water cooler. After Brazoria Imaging did not pay rent for January 2019, Celeste was notified that Brazoria Imaging had retained an attorney in this matter. Brazoria Imaging did not make any further rent payments, even though the Lease term lasted for nine more months.

Chandwani testified that the contractor damaged the Leased Premises when it removed the MRI machine and that Celeste spent $27,000 repairing this damage. Brazoria Imaging disputed this amount, but Bob agreed that the contractor made an 8-feet-wide rectangular hole in one of the walls of the Leased Premises so that the MRI machine could be removed. Chandwani stated that Celeste obtained a new tenant who started paying rent from June 12, 2019, forward. Chandwani testified that Celeste paid $4,430.70 to a real estate agent to obtain the new tenant. Celeste also submitted evidence at trial as to the amount paid to change the locks on December 19, 2018.

Celeste filed suit against Brazoria Imaging, Bob, Robert, and Brazoria County Imaging on Brazos, Inc., a Texas corporation ("Brazoria on Brazos"),[2]

_____

[2] Robert and Bob each own an 11.5% interest in Brazoria on Brazos. Robert was the manager of Brazoria on Brazos in December 2018.

4

asserting claims for breach of the Lease as well as tort claims for fraud, fraudulent transfer and liability under the Texas Theft Liability Act ("Theft Act"). Celeste did not allege or pursue any theory for piercing the corporate veil. The trial court granted Celeste's motion for partial summary judgment, concluding that Brazoria Imaging breached the Lease. The trial court then held a bench trial as to damages on this claim against Brazoria Imaging as well as the remaining claims. At the end of the bench trial, the trial court stated in open court that it was finding liability under the Theft Act and awarding $1,000 in additional damages under that statute. The trial court also stated that Bob and Robert would be jointly and severally liable with Brazoria Imaging, but that Celeste would take nothing against Brazoria on Brazos. The trial court also indicated that it would not be awarding damages for repairs to the Leased Premises because the evidence did not prove what a reasonable cost would be for those repairs.

At the end of a subsequent hearing regarding attorney's fees, the trial court stated that it was awarding Celeste $18,195 in attorney's fees and $17,000.38 in damages which the trial court indicated would be based on five rental payments for the first five months of 2019, the difference between the rental payment of new tenant and Brazoria County's rental payment for the last four months of the Lease term, expenses incurred to find a new tenant, additional damages under the Theft Act, and an offset for the security deposit under the Lease. At the end of the hearing, the trial court signed a final judgment in which it ordered that Celeste recover $17,200.38 against Brazoria Imaging, Bob, and Robert, jointly and severally, plus prejudgment interest, $18,195 in reasonable and necessary attorney's fees, court costs and postjudgment interest.[3] In this final judgment, the

---

[3] Although this judgment did not indicate how the $17,200.38 was calculated, the trial court initially entered a final judgment on May 22, 2021 which spelled out the calculation of damages. That judgment recited five months of missing rent ($16,125), four months of deficiency

5

trial court did not specify the basis for the damage award or limit its money judgment to any claim. The trial court also ordered that Celeste take nothing against Brazoria on Brazos. The trial court did not issue findings of fact or conclusions of law. Brazoria Imaging, Bob, and Robert (the "Imaging Parties") timely appealed the trial court's judgment.

## II. ISSUES AND ANALYSIS

When, as in today's case, the trial court did not file findings of fact and conclusions of law after a bench trial, we imply all findings necessary to support the trial court's judgment, and we will uphold those findings if sufficient evidence supports them. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

### A. Is there no evidence of theft because there is no evidence that Celeste was an owner of the MRI machine?

On appeal, the Imaging Parties concede that even without piercing the corporate veil, individuals acting on behalf of a corporate entity are liable for

---

($1,960), prorated commission to the real estate agent ($615), Theft Liability Act additional damages ($1,000), less an offset for the security deposit ($2,500), which totals $17,200. However, three days later the trial court signed an order setting aside the first judgment as improvidently granted. At the hearing regarding attorney's fees on May 25, 2021, the trial court stated that it incorrectly thought that the first judgment was an agreed judgment.

tortious acts that they direct or in which they knowingly participate. *See Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1985). Under their first issue, the Imaging Parties contend that none of the three tort claims provides a basis for affirming the trial court's judgment against Bob or Robert. The Imaging Parties assert that the trial evidence is legally insufficient to support a judgment against either Bob or Robert based on the Theft Act claims because there is no evidence of theft. The only argument that the Imaging Parties brief in support of the proposition that there is no evidence of theft is that there is no evidence that Celeste was an "owner" of the MRI machine for the purposes of the Theft Act, even if Celeste held a security interest in the MRI machine.

Section 14 of the Lease provides that "[a]s security for [Brazoria Imaging's] payment of Rent and performance of all of its other obligations under this Lease, [Brazoria Imaging] grants to [Celeste] a lien on and security interest in all property of [Brazoria Imaging] now or hereafter placed in, added to, or constituting a part of the Leased Premises. This Section 14 shall constitute a security agreement under the Uniform Commercial Code of the State of Texas, and [Celeste], as secured party, shall be entitled to all of the rights, remedies and recourses afforded to a secured party under such Uniform Commercial Code." The Theft Act provides that a person who appropriates an owner's property without the owner's effective consent and with the intent to deprive the owner of the property is liable to the owner for the damages resulting from this appropriation. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002, 134.003; Tex. Penal Code Ann. 31.03 (West, Westlaw through 2021 R.S.). "Owner" in this context means "a person who . . . has title to the property, possession of the property, whether lawful or not, *or a greater right to possession of the property than the actor*." Tex. Penal Code Ann. 1.07(35) (West, Westlaw through 2021 R.S.) (emphasis added). Evidence at trial showed

that Brazoria Leasing was in default under the Lease from December 6, 2018, through December 12, 2018, the date on which the MRI machine was removed from the Leased Premises and thus was no longer "placed in, added to, or constituting a part of the Leased Premises." Though Celeste did not have title to or possession of the MRI machine, Celeste still would qualify as an "owner" of the MRI machine if Celeste had a greater right to possession of the property than Brazoria Imaging. *See* Tex. Penal Code Ann. § 1.07(35). The Court of Criminal Appeals has concluded that, "to give ownership status to anyone with a rational connection to the property, the legislature has given 'owner' an expansive meaning: anyone having a possessory interest in the property through title, possession, whether lawful or not, or a greater right to possession of the property than the defendant, is an owner of the property." *Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011). After a default, a secured party has a greater right to possession of the property in which it holds a security interest than does the debtor. *See* Tex. Bus. & Com. Code Ann. § 9.609 (West, Westlaw through 2023 R.S.); *Sanchez v. MBank*, 792 S.W.2d 530, 532 (Tex. App.—El Paso 1990), *aff'd sub. nom. MBank El Paso v. Sanchez*, 836 S.W.2d 151 (Tex. 1992). We conclude that when the MRI machine was removed from the Leased Premises, Celeste was an "owner" of the MRI machine with a greater right to possession of the MRI machine than Brazoria Imaging. *See* Tex. Bus. & Com. Code Ann. § 9.609; Tex. Penal Code Ann. § 1.07(35); *Sanchez*, 792 S.W.2d at 532.

The Imaging Parties assert that Celeste's security interest in the MRI machine did not give Celeste an interest sufficient to make Celeste an owner of the MRI machine as that term is defined in the Penal Code. *See* Tex. Penal Code Ann. § 1.07(35). The Imaging Parties cite two cases for this proposition: *Williams v. State*, 641 S.W.2d 236 (Tex. Crim. App. 1982) and *Hernandez v. State*, 768

8

S.W.2d 5 (Tex. App.—Austin, 1989, no pet.). In *Williams*, the Court of Criminal Appeals concluded that a defendant convicted of theft under Penal Code section 31.03 should have been charged with hindering a secured creditor under Penal Code section 32.33 because (1) the defendant's alleged conduct was proscribed by both statutes; (2) the former was a general statute and the latter was a specific statute; (3) the elements and penalty provisions of the two offenses conflicted; and (4) a conviction of the defendant under the former statute would be a felony, but a conviction of the defendant under the latter statute would be a misdemeanor. *See Williams v. State*, 641 S.W.2d 236, 237–39 (Tex. Crim. App. 1982). The *Williams* court did not address whether the secured party satisfied the definition of owner. *See id*. In the years since the Court of Criminal Appeals decided *Williams*, the Legislature has amended both statutes. *See* Tex. Penal Code Ann. §§ 31.03, 32.33. Under the version of Penal Code section 32.33 applicable in December 2018, "[a] person who has signed a security agreement creating a security interest in property . . . commits an offense if, with intent to hinder enforcement of that interest . . . he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property." Tex. Penal Code Ann. § 32.33(b) (West, Westlaw through 2023 R.S.). As applied to the facts of today's case, the only possible actionable conduct under this statute by Brazoria Imaging would be removing the MRI machine, yet under the applicable version of the statute, "remove" is defined as "transport, without the effective consent of the secured party, **from the state** in which the property was located when the security interest or lien attached." Tex. Penal Code Ann. § 32.33(a)(1) (emphasis added). The MRI machine was taken from the Leased Premises in Angleton, Texas and moved to an MRI center in College Station, Texas. This action does not constitute removing the MRI machine as that term is used in Penal Code 32.33. *See id*. Under the facts of today's case, Brazoria Imaging's alleged conduct was not proscribed by Penal Code section 32.33. *See id*.

9

In addition, even if the alleged conduct were proscribed under Penal Code sections 31.03 and section 32.33, the level of the offenses would be the same, contrary to the situation in *Williams*. *See* Tex. Penal Code Ann. §§ 31.03(e)(5), 32.33(d)(5); *Williams*, 641 S.W.2d at 237, 239. Thus, *Williams* is not on point. *See Williams*, 641 S.W.2d at 237–39.

The Imaging Parties also rely on *Hernandez*, but in that case the court concluded the creditor had no right to possession under the deed of trust in question. *See Hernandez v. State*, 768 S.W.2d 5, 9 (Tex. App.—Austin, 1989, no pet.). Under the facts in today's case, Celeste was entitled to possession of the MRI machine at the Leased Premises based on Brazoria Imaging's default. *See* Tex. Bus. & Com. Code Ann. § 9.609; *Sanchez*, 792 S.W.2d at 532. Thus, *Hernandez* is not on point. *See Hernandez*, 768 S.W.2d at 9.

Because there was legally sufficient evidence at trial that Celeste was an "owner" of the MRI machine for the purposes of the Theft Act, the only argument that the Imaging Parties briefed in support of the proposition that there is no evidence of theft lacks merit. *See* Tex. Bus. & Com. Code Ann. § 9.609; Tex. Penal Code Ann. § 1.07(35); *Sanchez*, 792 S.W.2d at 532. The Imaging Parties have not briefed any other argument showing that there is no evidence of theft or that the trial evidence is legally insufficient to support a judgment against either Bob or Robert based on the Theft Act claims. Thus, we need not address the Imaging Parties' challenges to the other claims, and we overrule the first issue.

In their second issue, the Imaging Parties assert that the trial court erred in awarding additional damages under the Theft Act because there is no evidence of theft. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1). In its final judgment, the trial court does not state that it is awarding additional damages under the Theft Act. Presuming that the trial court did award these damages, the Imaging Parties

10

incorporate the argument we addressed under the first issue as their argument in support of the second issue. Having found that this argument lacks merit, we overrule the second issue. Though we still must address the third issue challenging the attorney's fees award, as to the remainder of the trial court's judgment, we may affirm the judgment without addressing the claims for breach of the Lease, fraud, or fraudulent transfer.[4]

**B.      Did the trial court err in awarding attorney's fees because Celeste did not segregate its attorney's fees so as to exclude attorney's fees as to claims for which attorney's fees are not recoverable?**

In their third issue, the Imaging Parties assert that the trial court erred in awarding reasonable and necessary attorney's fees because Celeste did not segregate its attorney's fees between claims for which attorney's fees are recoverable and claims for which attorney's fees are not recoverable. The Imaging Parties raised this complaint in the trial court. Claimants seeking to recover attorney's fees must segregate their fees between claims for which attorney's fees are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). "[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* at 313. "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. The party seeking to recover its fees bears the burden to show that segregation is not required. *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

---

[4] We need not and do not analyze Celeste's Theft Act claims based on Celeste's alleged lien in the MRI machine under Texas Property Code section 54.021. *See* Tex. Prop. Code Ann. § 54.021 (West, Westlaw through 2023 R.S.).

The trial court awarded the full amount of attorney's fees billed to Celeste, which Celeste's counsel of record testified were reasonable and necessary fees for the prosecution of all Celeste's claims. Celeste's counsel conceded that Celeste did not segregate its attorney's fees for its fraud claims, even though attorney's fees are not recoverable for those claims. Celeste's counsel stated in a conclusory manner that he did not segregate the attorney's fees for the fraud claims because those claims are "so intertwined with all the other [claims]." Neither of Celeste's expert witnesses on attorney's fees testified that all or part of the legal services of Celeste's attorneys advanced both a recoverable and unrecoverable claim. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14. On this record, the trial court erred in rendering judgment that Celeste recover $18,195 in reasonable and necessary attorney's fees, and we must reverse the trial court's award of attorney's fees and remand for a new trial on attorney's fees. *See id*. at 314–15 (concluding that because unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be, the proper remedy for failure to segregate is a reversal and remand for a new trial on attorney's fees); *Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *8–9 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.). We sustain the third issue, reverse the part of the judgment in which the trial court awarded attorney's fees, and remand the issue of the amount of attorney's fees to be awarded to Celeste for a new trial. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314–15; *Tijerina*, 2017 WL 506779, at *8–9.

### III. Conclusion

Except as to the award of attorney's fees, the Imaging Parties have not shown error in the trial court's judgment. We reverse the judgment in part as to the award of attorney's fees and remand the case for a new trial limited to a determination of the amount of reasonable and necessary attorney's fees to be

12

awarded to Celeste. We affirm the remainder of the trial court's judgment.


/s/     Randy Wilson
        Justice

Panel consists of Justices Spain, Poissant, and Wilson.