In re: Estate of Louise C. Davis,       )
     Deceased.       )
               )
SARAH FOSTER KELLEY,       )
               )
     Petitioner/Appellant,       )     Appeal No.
               )     01-A-01-9803-PB-00157
v.       )
               )     Davidson Probate
SARAH HILL MARTIN,       )     No. 95366
               )
     Respondent/Appellee.       )
               )

**FILED**

Davidson Probate

**December 3, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE DAVIDSON COUNTY PROBATE COURT

AT NASHVILLE, TENNESSEE


THE HONORABLE FRANK G. CLEMENT, CHANCELLOR



DONALD ARKOVITZ
332 White Bridge Road
Nashville, Tennessee 37209
     ATTORNEY FOR PETITIONER/APPELLANT



GEORGE H. CATE, JR.
95 White Bridge Road
Suite 503, Cavalier Building
Nashville, Tennessee 37205
     ATTORNEY FOR RESPONDENT/APPELLEE



AFFIRMED AND REMANDED



WILLIAM B. CAIN, JUDGE

# O P I N I O N

This appeal involves the validity of certain transactions entered into by the holder of a power of attorney. The trial court set aside the transactions finding that the attorney in fact had failed to rebut the presumption of undue influence which arose in light of these self-benefitting transactions. We affirm the decision of the trial court.

## I. FACTS

This case was tried by agreement of all parties in a rather unorthodox fashion. No testimony was heard but all documents deemed relevant by all parties, together with affidavits, pleadings, and interrogatories, were submitted to the trial court under a waiver by all parties of any objections thereto. Thus, we have, as did the trial judge, only an extensive technical record containing all manner of objectional material with a stipulation to waive all objections. We turn to this record reviewing the trial court's findings of fact *de novo*, with a presumption of correctness, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d).

This case arises out of the distribution of the estate of Louise Davis. Ms. Davis died in May of 1990 leaving a will dated February 27, 1987. Ms. Davis' will left one-sixth shares of her estate to six people, one of whom is Sarah Kelley, the appellant in this action, and another, Sarah Hill Martin, the appellee. Ms. Kelley (hereinafter "Appellant") was named the executrix under the will. After the court probated the will, Ms. Martin (hereinafter "Appellee") petitioned for an interim accounting of the assets of the estate specifically calling into question Appellant's actions under a power of attorney she held for Ms. Davis during the last years of Ms. Davis' life.

In June of 1987, Ms. Davis executed a general power of attorney which named Appellant attorney in fact and authorized her to manage Ms. Davis' "legal financial or other affairs." It is clear that before Ms. Davis died, Appellant devoted much time to her and performed numerous services for her. However, Appellant engaged in two transactions which resulted in financial benefit to

herself and which have been subjected to judicial scrutiny.

First, Appellant used Ms. Davis' funds to purchase real estate next door to Appellant's home at 565 Whispering Hills Drive for $70,363.00. The property was initially conveyed by warranty deed to both Ms. Davis and Appellant. However, within eleven days of the sale, a quitclaim deed was executed in which Ms. Davis relinquished all her interest in the property such that fee simple title was created in Appellant. The second disputed transaction involves the sale of Ms. Davis' home located on McMahon Drive. After selling the home for $60,923.52, Appellant deposited $10,923.52 of the proceeds of the sale in a joint survivorship bank account she held with Ms. Davis. Appellant used the remaining $50,000.00 to purchase a certificate of deposit titled in Appellant's and Ms. Davis' names. Both the purchase of the one home and the sale of the other took place in 1989, less than a year before Ms. Davis' death. When Ms. Davis died, the funds in the jointly held accounts were transferred to Appellant's own account.

As the court stated in its memorandum opinion, no hearing was held due to the parties' agreement that the Probate Court should decide the case upon a review of the pleadings, interrogatories and affidavits contained in the technical record with the same conclusive effect as if a full hearing were held. Both Appellant and Dorothy Parker, a live-in nurse/assistant employed by Appellant to care for Ms. Davis, submitted affidavits in which they addressed the transactions at issue. The trial judge aptly summarized these affidavits by saying that Appellant and Ms. Parker "describe in detail . . . a bizarre series of events which made the sale of Davis' home on McMahon Avenue necessary, and describe further the extraordinary measures which they took to 'protect' [Ms. Davis] from her family members who in their opinion were trying to have [Ms.] Davis declared incompetent and placed in a nursing home."

In Appellant's affidavit, she states that she was called to Ms. Davis' rescue in May of 1989 after Ms. Davis had experienced harassment at the McMahon Avenue address. Appellant asserted that Ms. Davis had no desire to live at her home any longer, thus prompting Appellant to purchase the house next door to

her own at 565 Whispering Hills Drive for Ms. Davis to live in. Once in the new house, Ms. Davis told Appellant that she wanted Appellant to be "the lady of the house with survivorship rights of ownership." As for the proceeds from the sale of Ms. Davis' McMahon Avenue home, Appellant stated that Ms. Davis visited the bank and instructed that Appellant be on the joint account with her. When Appellant asked Ms. Davis if she wanted to open a CD in the name of her nephew Grady Curley, Ms. Davis responded that "her own blood had tried to kill her, i.e., through harassment, and she stated that she wanted [Appellant] to have these monies at her death."

Ms. Parker gave a consistent account of the harassment at the McMahon Avenue address and Ms. Davis' consequent desire to move from there. She stated that Ms. Davis wanted Appellant's name on the deed at the Whispering Hills home so that Appellant "could have any further intruders arrested and appear against them in court." In addition, Ms. Parker stated that she witnessed Ms. Davis voicing her desire that Appellant be the lady of the house.

The Probate Judge of Davidson County, Honorable Frank G. Clement, Jr., filed an exhaustive and detailed memorandum of law and fact concluding that the power of attorney, under date of February 20, 1987, created a confidential relationship between Mrs. Davis and her attorney in fact, Appellant, that the transactions in issue were the result of undue influence as the attorney in fact had not established a lack of undue influence by clear and convincing evidence.

The trial court made the following observation with regard to Appellant's evidence:

> The evidence shows that the atmosphere in which Davis was living was permeated with an attitude that there was a broad conspiracy afoot to declare Davis incompetent and have her placed in a nursing home, According to [Appellant] and Parker, the conspirators included many of the decedent's family members, attorneys, bank employees, neighbors, maintenance men, and doctors. [Appellant] and Parker, who was acting at [Appellant's] direction, took extreme measures to segregate the decedent from anyone that they considered part of the conspiracy. These measures included installation of security cameras around Davis' home,

relocation of Davis to an apartment and ultimately the purchase of a home next to the attorney in fact and the sale of Davis' home on McMahon Avenue. As a result, while under the control of the attorney in fact, Davis became isolated from her family. Attempts at contact by her family were characterized as "harassment" by [Appellant].

As stated, the court held that a confidential relationship existed between Appellant and Ms. Davis and that Appellant had not rebutted by clear and convincing evidence the presumption that the transactions which benefitted her were the product of undue influence. The court voided the quitclaim deed from Ms. Davis which had conveyed fee simple title and a right of survivorship to Appellant in the property located at 565 Whispering Hills Drive and declared this property to be an asset of the estate. The court reformed the initial deed which reflected the grant of this property to Louise Davis and Appellant by removing the name of Appellant. In addition, the court found that Appellant must return to Ms. Davis' estate the sum of $60,923.00 representing proceeds from the sale of Ms. Davis' home on McMahon Avenue plus pre-judgment interest at the rate of ten percent per annum computed from and after May 3, 1990, the date of Ms. Davis' death until such time as the funds are restored to the estate account.

## II. ISSUE

An unrestricted power of attorney, as a matter of law, creates a confidential relationship. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995) (citing *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. App. 1989)). In Tennessee, it is well-established law that in the face of "the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Matlock*, 902 S.W.2d at 386. Since Appellant, as the attorney in fact under the power of attorney for Ms. Davis, engaged in transactions from which she received a benefit, a presumption of undue influence was created by operation of law. Therefore, the sole issue in this matter is whether or not Appellant rebutted this presumption by clear and convincing evidence.

"Proof that the donor received independent advice respecting the consequences and advisability of the gift is one example, but not the only one, of such proof of fairness." ***Richmond v. Christian***, 555 S.W.2d 105, 107-08 (Tenn. 1977). While reaffirming the rule that proof of independent advice is not essential in every case, the court has noted that it may, under certain circumstances, be "the only way in which the presumption of undue influence or unfairness can be rebutted, and in which it can be shown that the donor was acting independently and with full appreciation of what he was doing." ***Id.*** at 108 (quoting ***Roberts v. Chase***, 25 Tenn. App. 636, 166 S.W.2d 641 (1942)). In ***Richmond***, the court held that proof of independent advice was essential to rebut the presumption under its particular facts which were summarized as follows:

> Here, the dominated donor made a gift which denuded her of all her realty, thus impoverishing her. Furthermore, she was very old and physically debilitated, and was feeble to the point of needing help with virtually every personal need. Her son was living with her every day in her house and she appears to have entrusted to him her life and all of her belongings. Likewise significant is the fact that, without apparent reason, Mrs. Christian suddenly changed her plan to make an equal division of her real estate among her three children and, instead, decided to make a wholesale transfer to her son.

***Richmond***, 555 S.W.2d at 109.

In a similar case, ***Turner v. Leathers***, the court considered the validity of certain transfers made by a donor who was 90 years of age at the time of making the gift and who was afflicted with Bright's disease and arteriosclerosis. In addition, the donor was very feeble, both mentally and physically and was completely dependent on the donee. The court held as follows:

> Under the circumstances presented in this cause, on account of the age, physical and mental deterioration of the donor, and where he is under the unquestioned 'dominion and control' of the donee, it is necessary that he have competent, independent advice, free from the influence of the donee, in order for the gift to stand.

***Turner v. Leathers***, 191 Tenn. 292, 232 S.W.2d 269, 271-72 (1950).

In making its decision in the instant case, the trial court concluded that "independent advice would be an essential component of the proof necessary to

overcome the presumption of undue influence." We agree. From the limited proof that we have here, this case involves an elderly lady who spent her last years governed by fears which were shared by and possibly fueled by Appellant. As the lower court observed, nowhere in the record is there any evidence that Ms. Davis was given independent advice from a disassociated party concerning these transfers. Indeed, the only allegations made by Appellant regarding independent advice are found in Appellant's brief where she merely asserts that independent counsel was available to Ms. Davis in the following forms: Detective Jim Ball who recommended security measures at Ms. Davis' home, attorney Gwen McFarland whom Ms. Davis conferred with, John Altschuler of Third National Bank and Holly Garfinkle, an attorney for Department of Human Services.

We can find no proof in the record that Ms. Davis even spoke with individuals by the names Jim Ball or Holly Garfinkle. The only evidence of Ms. Davis' contact with the other two persons named above is found in the affidavits of Appellant and Ms. Parker. In their affidavits, both women state that Gwen McFarland was an attorney sent to interview Ms. Davis and that Ms. Davis told Ms. McFarland that she wished to remain in her own home. It seems that Ms. McFarland was associated with the court system and that she was involved for the purpose of determining Ms. Davis' ability to live alone. Mr. Altschuler is referred to as being with Ms. Davis' family members who were harassing her and invading her privacy. The Appellant states that Mr. Altschuler surrounded Ms Davis' house and announced that he would get in. Ms. Parker's affidavit implies that Mr. Altschuler was trying to take over Ms. Davis' estate.

Stating in **Turner** that "independent advice means that the adviser must not only be competent but independent," our supreme court further defined "independent advice" as follows:

> 'Proper independent advice in this connection means that the donor had the [preliminary] benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself . . . of his proposed

benefactions.'

*Turner*, 232 S.W.2d at 271 (citations omitted). Most significantly, this definition assumes that the independent advice pertains to the gift from the donor to the donee. A donor's exposure to people other than the donee is insufficient. There is simply no evidence in this record nor is there even an allegation that Ms. Davis conferred with anyone upon the subject of her intended gift. Moreover, there is no other clear and convincing evidence suggesting that these two transactions were fair.

## III. CONCLUSION

A confidential relationship between Ms. Davis and Appellant was created as a matter of law when Appellant was given the power of attorney for Ms. Davis. We hold that Appellant failed to rebut the presumption of undue influence that arose when Appellant used her position as attorney in fact to obtain a benefit from Ms. Davis. The trial court is therefore affirmed in all respects. The costs of this appeal should be taxed to Appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRES. JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE