IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2001 Session

## IN RE: ESTATE OF WILLIAM D. NEELY

**Appeal from the Circuit Court for Rutherford County**
**No. 36192      Robert E. Corlew, Judge**

_____

**No. M2000-01144-COA-R3-CV - Filed October 22, 2001**

_____

The trial court set aside a will that was executed shortly before the testator's death, on findings of confidential relationship, suspicious circumstances and undue influence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

John T. Blankenship and Patricia A. Blankenship, Murfreesboro, Tennessee, for the appellant, Dorothy Ann Richardson, Executrix.

William P. Nelms, Murfreesboro, Tennessee, and Susan Melton, Woodbury, Tennessee, for the appellees, Billy Barrett, Jim Barrett, Mickey Barrett, Mark Barrett, Brian Barrett and Timmy Barrett.

**OPINION**

### I. THE MAKING OF A WILL

This case involves a challenge to a will executed by an eighty-year-old retired farmer on January 11, 1994, just twelve days before his death. The terms of the will differed greatly from earlier dispositions of property by the testator and his late wife (who predeceased the testator by four months). Since the question of the validity of the will is a close one, we must discuss the circumstances surrounding its procurement and execution in considerable detail.

In September of 1993, Eula Mai Neely, the wife of William Neely passed away after a long illness. Mr. and Mrs. Neely had been childhood sweethearts, and were married to each other for almost sixty years. His wife's death was a devastating blow to Mr. Neely. He cried often in the following months, and spent most of his remaining time lying in bed with his eyes closed. Mr.

Neely's doctor diagnosed him with chronic depression, and added anti-depressants to the grieving widower's extensive drug regimen.

The Neelys' marriage had produced three daughters, only two of whom survived into adulthood. One daughter, Bobby Jean Barrett, died in 1983, leaving six sons. The other daughter, Dorothy Ann Richardson, had three sons and a daughter. All the grandchildren worked in Mr. Neely's numerous farming enterprises when they were young, and continued to help to a lesser extent after they grew up. In August or September of 1993, Steven Richardson, who was unemployed at the time, took over the operation of the farm. Ralph Richardson, who had a job as a printer, also helped out, and moved into a tenant house on the property.

Both Neelys had been suffering from serious health problems prior to the death of Ms. Eula Mai. Because their infirmities made it difficult or impossible for them to handle the ordinary demands of daily living, Ms. Richardson took over their financial affairs, and oversaw their medical needs. In 1992, her name was placed on their bank accounts. She paid their bills and made arrangements for the in-home health care they both needed. She also had access to a key for a lockbox containing all their important papers. Mr. and Ms. Neely were both bedridden by 1993, and hospital beds were set up for them in the living room of their house.

After the death of his wife, Ms. Richardson and her sons visited Mr. Neely on a daily basis. Her sons testified that their mother never placed any restrictions or limitations on the time they could spend with their grandfather. The Barrett grandsons, who lived further away, testified that they also tried to visit, but that Ms. Richardson discouraged them, and limited the duration of each visit to five or ten minutes, telling them that their grandfather was too sick for longer visits. Ms. Richardson admitted limiting their visits, but testified that she did so to protect her father's health.

At some point, Mr. Neely's brother and former business partner Arzelle visited. William Neely told his brother that he wanted to change his will. Attorney Larry Tolbert had previously taken care of some legal matters for Arzelle Neely, so Arzelle went to see Mr. Tolbert, and asked him to contact his brother.

When Larry Tolbert arrived at the Neely home, Dorothy Richardson, her husband, and a sitter were there. After exchanging some pleasantries with them, Mr. Tolbert asked them to let him speak privately to Mr. Neely, and they left the room. During his one hour conversation with William Neely, Mr. Tolbert was able to satisfy himself that Mr. Neely was oriented as to time and place, that he knew the various assets that made up his estate, and that he remembered all his children and grandchildren. Though it was obvious to Mr. Tolbert that he was extremely ill, the attorney concluded that Mr. Neely had the mental capacity to make a will.

Mr. Tolbert had Mr. Neely's existing will in his possession at that meeting (although it is unclear how he obtained it). That will apparently treated his surviving daughter equally with the heirs of his deceased daughter. Mr. Tolbert read the will line by line to Mr. Neely, and Mr. Neely in turn told Mr. Tolbert the changes he wanted to make. Those changes virtually disinherited the six

Barrett grandchildren, and left almost the entire estate to Dorothy Richardson. Mr. Tolbert asked Mr. Neely his reasons for such a change, and according to Mr. Tolbert's testimony, "he indicated that he was disappointed with, I guess, the grandchildren through his deceased daughter, that he didn't feel like they had come to see him, cared about him, behaved in a manner that he approved."

In a week or less, Mr. Tolbert returned with a draft of the new will. He again had a private conversation with Mr. Neely, and read the will to him. Thirty or forty minutes later, two of Mr. Tolbert's secretaries arrived, and they witnessed the signing of the will by Mr. Neely. The will named Ms. Richardson as executrix of the estate. A bequest of $18,000 was made to Mr. Neely's great-grandchild, Erin Nicole Richardson. Another bequest of $4,000 for educational purposes was made to Bryan Daniel Barrett, the only grandchild to ever attend college.

The residual clause gave all the remainder of Mr. Neely's property to Dorothy Richardson, with her husband and children as contingent beneficiaries. The clause concluded "[i]n making the foregoing bequest, I am not unmindful of certain other grandchildren by my beloved and deceased daughter, BOBBYE JEAN BARRETT, but choose to omit said children from any share of my estate."

On January 15, 1994, just four days after the execution of the will, Mr. Neely was admitted to the hospital. His doctor testified that he was suffering from chronic depression, as well as bedsores, diabetes, severe peripheral vascular disease, and chronic hepatic insufficiency. Mr. Neely died on January 23, 1994.

## II. A WILL CONTEST

Pursuant to the petition of Dorothy Ann Richardson, the will discussed above was admitted to probate in common form on February 3, 1994, and the Probate Court issued Letters Testamentary to Ms. Richardson as Executrix. On February 8, 1996, the six Barrett grandchildren filed a complaint to contest the will. They alleged that the will of January 11, 1994 was not valid because Mr. Neely was not of sound mind at the time of its execution, and because he had been unduly influenced by Dorothy Ann Richardson. The Probate Court certified the will contest for trial to the Circuit Court.

Judge Taylor of the Circuit Court conducted a hearing of the matter on January 13 and 14, 1999. After hearing the testimony of Ms. Richardson, three of the Barrett brothers, and Arzelle Neely, the judge concluded that the decedent was lucid at the time he made his Last Will and Testament. He also found that Ms. Richardson had a fiduciary relationship with the testator, but that she did not exercise dominion and control over him, and she was not active in the preparation or execution of his will. For those reasons, he determined that the plaintiffs had failed to make out a prima facie case, and he granted the defendant's Motion for a Directed Verdict.

The plaintiffs then filed a Motion for New Trial, arguing that the Court's decision was contrary to existing case law. They contended that the finding of a fiduciary relationship created a

-3-

presumption of undue influence, shifting the burden of proof to the defendant to rebut the presumption, and that Ms. Richardson had not met that burden. After reviewing the case of *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. Ct. App. 1989) the trial court granted the motion, and ordered the matter reset for trial with a different trier of fact.

A second trial was conducted on March 14 and 16, 2000, this time before Judge Corlew. The proof showed that Mr. Neely's estate was quite valuable. Aside from financial assets of over $150,000, it included two farms of 102 acres and 124 acres respectively. Both farms adjoin the Murfreesboro City Limits, and are surrounded by subdivisions. Ms. Richardson testified that she didn't know much about real estate, but conceded that the properties were worth substantially more than the $165,300 indicated by the inheritance tax return filed under her signature.

Ms. Richardson admitted under cross-examination that the thought of how the Barrett boys might spend the money that her father and mother accumulated by their hard work really bothered her, but she didn't state the reason for her concern. She testified that her sons did more of the work on the farm than her sister's sons, but when asked whether she ever called her nephews to come and help out, she stated that "I don't guess I did. There's a reason behind that also." She never explained her reason.

At the close of the proof, and after closing arguments, the judge took the case under advisement. He subsequently issued a detailed Letter Memorandum and an Order, setting aside the will. Judge Corlew found a confidential relationship between the testator and Ms. Richardson, which together with several suspicious circumstances created a presumption of undue influence, and shifted the burden of proof to the proponent of the will to prove that it was not procured by undue influence. The court found that the will's proponent did not present sufficient proof to dispel the presumption, and declared the will to be void. This appeal followed.

**III.**

The appellant contends that contrary to the finding of the trial court, there was not a confidential relationship between herself and the testator. She further argues that even if we agree with the trial court that such a relationship did exist, it should not raise a presumption of undue influence, because Mr. Neely received independent advice from Mr. Tolbert. We will examine both of these arguments, and we will discuss some of the suspicious circumstances that the trial court found were sufficient to support a determination that the will was invalid.

**A. CONFIDENTIAL RELATIONSHIP**

In *Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1995), our Supreme Court restated the long-established rule that "the existence of a confidential or fiduciary relationship, together with a transaction by which the dominant party obtains a benefit from the other party, gives rise to a presumption of undue influence." 902 S.W.2d at 385. Certain relationships, such as those of conservator and ward, are proof, as a matter of law, of the existence of a confidential relationship.

*Parham v. Walker*, 568 S.W.2d 622 (Tenn. Ct. App. 1978). An unrestricted power of attorney, in and of itself, also creates a confidential relationship between the parties. *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. Ct. App. 1989).

The appellant notes that none of the relationships that prove the existence of a confidential relationship as a matter of law are present in the case at bar. While her name was on her father's bank accounts, and she took care of all his financial affairs, he did not execute a power of attorney in her favor. She relies upon the case of *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977), which cited a long line of prior cases to the effect that "the normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and raises no presumption of the invalidity of a gift from one to the other." 558 S.W.2d at 848.

The *Allen* Court went on to say, however, that where the elements of dominion and control by the stronger over the weaker are present, or where there is a showing of senility or physical and mental deterioration in the testator, or other conditions which would tend to establish that the free agency of the donor was destroyed, then the presumption against the will is applicable. *See also Richmond v. Christian*, 555 S.W.2d 105 (Tenn. 1977).

In the present case, Mr. Neely was completely dependent upon his daughter, not only for his financial needs, but for all of his physical needs as well. The proof showed that he was taking a great number of medications, that he could not move from his bed to a reclining chair in the same room without assistance, that he was incontinent and had to wear a diaper, that he usually lay in bed all day with his eyes closed, and that he had to have a sitter or someone else with him at all times. Though Ms. Richardson did not reside in his house, she was the one who hired and paid the sitters who stayed with him when she could not. He was clearly under her dominion and control.

We believe that a will executed under such circumstances, which leaves virtually all the testator's property to the person exercising dominion and control over him, and which disinherits others who would normally be considered natural recipients of his bounty, must be regarded with the utmost skepticism. Such skepticism is consistent with the rule which creates a presumption that the weaker party was the victim of undue influence on the part of the dominant party, and that his will is therefore invalid.

### B. THE RULE OF INDEPENDENT ADVICE

The presumption of undue influence arising from the dominion and control of one party by another is not a conclusive presumption. It can be rebutted, but only by clear and convincing evidence of the fairness of the transaction. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995). Proof that the testator received independent advice concerning the disposition of his property is one way to establish fairness. *Bills v. Lindsay*, 909 S.W.2d 434 (Tenn. Ct. App. 1993); *Richmond v. Christian*, 555 S.W.2d 105 (Tenn. 1977).

The appellant contends that she was not involved in any way with the advice Mr. Neely received from Mr. Tolbert at the time of the will's execution. She notes that Mr. Neely did not ask her to find a lawyer so he could change his will, but asked his brother instead; that she herself had never been a client of Mr. Tolbert's; and that she was not in the room during Mr. Neely's two conversations with the lawyer. She also testified that she never spoke to Mr. Neely or to Mr. Tolbert about the estate or about the will, and other witnesses testified that they never observed her trying to influence her father in regard to the disposition of his property.

The trial court stated that Mr. Tolbert had acted in a responsible manner, and found that he had counseled Mr. Neely without the direct involvement of Mr. Neely's daughter. However, Ms. Richardson's hands-off attitude in regard to the execution of the will does not fully dispel the presumption of undue influence, because it does not eliminate the questions raised by her conduct when she acted, in effect, as the gatekeeper for her father.

## IV. SUSPICIOUS CIRCUMSTANCES

In *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. Ct. App. 1989), this court noted that while undue influence can be proven by either direct or circumstantial evidence, direct evidence is rarely available, and in most cases, it is established by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act.

Among the suspicious circumstances listed in *Mitchell v. Smith,* supra, are the existence of a confidential relationship between the testator and the beneficiary, physical or mental deterioration of the testator, the testator's advanced age, secrecy concerning the will's existence, the unjust or unnatural nature of the will's terms, and the testator being in an emotionally distraught state. 779 S.W.2d at 388.

In the present case, the trial court found most of the circumstances listed above to be present to a greater or lesser degree. For example, the court found that the testator had suffered both physical and mental deterioration, but acknowledged that the extent of his mental deterioration was disputed. The court also found that Mr. Neely was emotionally distraught at least some of the time.

The trial court also found the limitations on visitation by the Barrett grandchildren to be a factor warranting suspicion. The proof showed that Ms. Richardson's children had unlimited access to their grandfather, but that she placed stringent limitations upon visits by the children of her deceased sister. Ms. Richardson testified that these limitations were in place for the sake of her father's health, but she never explained why visits by the Barrett grandchildren would be detrimental to his health, while visits by the Richardson grandchildren would not be.

We can infer from her testimony that she did not approve of something in the behavior of her nephews, but since she failed to enlighten the court on what she objected to, we cannot evaluate the validity of her reasons for excluding them from the company of their grandfather. We can only

observe that she was in a position to control the information he received about them, and that he was dependent upon her for an understanding as to their conduct and their attitude towards him.[1]

Appellant disputes the trial court's findings as to the suspicious circumstances enumerated in *Mitchell v. Smith*, supra. She also claims that the restrictions imposed upon the Barrett grandsons were not quite as stringent as they testified to, and that she didn't have complete control over visitation, because Arzelle Neely could visit his brother any time he wanted to. We are compelled to presume, however, that the trial court's findings are correct, unless the evidence preponderates otherwise. Tenn. R. Civ. P. 13(d). After a careful and thorough reading of the record, we do not believe that the evidence preponderates against the trial court's findings that there are a number of suspicious circumstances with regard to the will, and that insufficient evidence was presented by the beneficiary to rebut the presumption of invalidity arising from those circumstances.

## V.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Rutherford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Dorothy Ann Richardson.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[1] It is interesting to note that Brian Barrett, who entered MTSU in the fall of 1993, never had any conversations with his grandfather to let him know that he was attending college. However, he did tell Ms. Richardson about his plans, and the only bequest to a member of the Barrett family found in the will of January 11, 1994 was the one to Brian, "to be used exclusively for said child's educational expenses through his collegiate years."