IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS OCTOBER 28, 2004

## IN RE: ESTATE OF EDDIEHUE MORRIS BRANCH, DECEASED

**Direct Appeal from the Probate Court for Shelby County**
**No. C-8817     Robert Benham, Judge**

_____

**No. W2004-01310-COA-R3--CV - Filed March 28, 2005**

_____

This case arises out of a will contest filed by Appellants. At trial, Appellants alleged that Appellee unduly influenced Decedent and that Decedent's Last Will and Testament is a product of that undue influence rendering the Will invalid. After a hearing, the trial court determined that Decedent's Will was not the product of undue influence and dismissed the will contest. Appellants now seek review by this Court, and, for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jeffrey Jones, Bartlett, TN, for Appellants

Rex L. Brasher, Jr., Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

EddieHue Morris Branch ("Branch" or "Decedent") had four[1] living children: Eddie Morris Branch, Jr. ("Junior"), William Taylor Branch ("Taylor"), Bruce Branch ("Bruce"), and Paula Freeman ("Paula" or, collectively with Junior, Taylor, and Bruce, "Branch's Children" or the "Appellants"). For a period between thirty and fifty years, Branch lived with Sadie Mitchell

_____

[1]      Although Yolanda Jones testified that she was also a daughter of Branch, the trial court found, and the record supports, that Branch had only four living children. Additionally, Branch had one child that was stillborn.

("Mitchell" or "Appellee").[2] Though Branch and Mitchell never married, several witnesses stated that, at one point in time, their impression was that Branch and Mitchell were married. At no point did any of Branch's four children have a good relationship with Mitchell.

In May 2001, Branch instructed Michael Hartsfield ("Hartsfield"), an attorney who had previously worked for Branch, to prepare a Will. Hartsfield had ongoing discussions with Branch, and Branch expressed the desire that Mitchell inherit his estate rather than his children because Mitchell took care of him and his children hardly ever visited him. Branch also expressed his wishes and reasoning to his nephew, Howard William. Hartsfield prepared a Will in accordance with Branch's expressed desire, and Branch executed the Will in May 2001.

A year later, Branch contacted Hartsfield and asked if Hartsfield had his May 2001 Will. After Hartsfield could not locate the May 2001 Will, Branch requested Hartsfield to prepare another Will identical to the May 2001 Will, which bequeathed and devised all of Branch's estate to Mitchell. Hartsfield never observed Branch in person before the execution of the second Will and discussed the terms of the second Will only over the telephone. After Hartsfield drafted Branch's second Will, Mitchell and her niece, Gloria Smith ("Smith"), picked up the Will from Hartsfield's office. Mitchell and Smith returned to Branch's home with the second Will. Subsequently, Mitchell left the room, and Branch read and signed the second Will on May 28, 2002, with Broderick Connesero ("Connesero"), Mitchell's great nephew, Juanita James ("James"), one of Mitchell's nieces, and Lena James, Mitchell's sister, acting as witnesses.Connesero, James, and Smith all testified that Branch understood what he was doing, and there was no indication that he was confused at the time of the execution.

In the last few years of his life, Branch required a catheter for his urinary problems and suffered from diabetes, high blood pressure, and glaucoma in one eye. Additionally, Mitchell testified that, while Branch did not use a walker or wheelchair, he required her assistance to walk. Branch died at the age of 91 on October 23, 2003.

On October 30, 2003, Mitchell filed a petition to admit Branch's May 2002 Will to probate, which named Mitchell executrix of the estate. The Shelby County Probate Court admitted the Will to probate and appointed Mitchell the personal representative of Branch's estate. On December 30, 2003, Branch's Children filed a will contest in the probate court, alleging that Branch's Will admitted to probate was the product of undue influence on the part of Mitchell. After a hearing, the trial court issued an order finding the Will was not a product of undue influence and confirmed the Will's validity. Branch's Children appeal to this Court presenting only one issue for our review: whether the trial court erred when it determined that Mitchell did not exert undue influence over Branch when he executed his Will on May 28, 2002. For the following reasons, we affirm.

---

[2]    Though the testimony varied regarding the continuity and length of the period of Branch's and Mitchell's cohabitation, the trial court found, and the record supports, that Branch and Mitchell had a "very long relationship." Specifically, in its final order, the trial court found the testimony to be that Mitchell lived with Branch for "either thirty (30), forty (40), or fifty (50) years as both a companion and caretaker."

-2-

## Standard of Review

"The existence of a confidential relationship and the exercise of undue influence are questions of fact." *Gibson v. Gibson*, No. W2004-00005-COA-R3-CV, 2004 Tenn. App. LEXIS 722, at *9 (Tenn. Ct. App. Nov. 2, 2004) (citing *Clark v. Perry*, No. 02A01-9704-CH-00080, 1998 Tenn. App. LEXIS 194, at *12-13 (Tenn. Ct. App. Mar. 19, 1998) (citing *Fritts v. Abbott*, 938 S.W.2d 420, 421 (Tenn. Ct. App. 1996))). Therefore, our review of such issues is *de novo* upon the record, affording the trial court's findings of fact a presumption of correctness, unless the evidence preponderates otherwise. *Id.* at *9-10; Tenn. R. App. P. 13(d) (2004). For questions of law, the scope of review is *de novo* with no presumption of correctness afforded to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## Undue Influence

Appellants' sole issue on appeal concerns the trial court's determination that Decedent was not unduly influenced by Appellee when he executed his Will. Initially, we note that the party challenging the validity of a Will under a theory of undue influence bears the burden of proving the existence of suspicious circumstances warranting a determination that the testator did not act freely and independently. *In re Estate of Maddox*, 60 S.W.3d 84, 88-89 (Tenn. Ct. App. 2001) (citing *Fell v. Rambo*, 36 S.W.3d 837, 847 (Tenn. Ct. App. 2000); *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989)). "Whether the suspicious circumstances relied upon by the contestants are sufficient to invalidate a will should be 'decided by the application of sound principles and good sense.'" *Id.* at 89 (quoting *Halle v. Summerfield*, 287 S.W.2d 57, 61 (Tenn. 1956)).

Our courts have not attempted to catalogue every type of suspicious circumstance or the number of circumstances required to invalidate a Will. *Id.* (citing 1 Jack W. Robinson & Jeff Mobley, *Pritchard on the Law of Wills and the Administration of Estates* § 130, at 209-30 (5th ed. 1994)); *see also In re Estate of Cranor*, No. M1997-00231-COA-R3-CV, 2000 Tenn. App. LEXIS 231, at *26 (Tenn. Ct. App. Apr. 4, 2000). Examples of "suspicious circumstances" relied upon to establish undue influence include the following: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the beneficiary's involvement in procuring the Will; (3) secrecy concerning the Will's existence; (4) the testator's advanced age; (5) the lack of independent advice in preparing the instrument; (6) the unjust or unnatural nature of the instrument's terms; (7) whether the testator was in an emotionally distraught state; (8) discrepancies between the instrument and the testator's expressed intentions; and (9) fraud or duress directed toward the testator. *Gibson v. Gibson*, No. W2004-00005-COA-R3-CV, 2004 Tenn. App. LEXIS 722, at *14-15 (Tenn. Ct. App. Nov. 2, 2004) (citing *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977); *Halle*, 287 S.W.2d at 61-62; *Am. Trust & Banking Co. v. Williams*, 225 S.W.2d 79, 85 (Tenn. 1948)); *see also In re Estate of Maddox*, 60 S.W.3d at 89 (citing *In re Estate of Elam*, 738 S.W.2d 169, 173 (Tenn. 1987); *Kelly*, 558 S.W.2d at 848; *Mitchell*, 779 S.W.2d at 388).

In this case, Appellants argue that Appellee had a "confidential relationship" with Decedent which, along with other circumstances, establish that Decedent's Will was the product of undue influence. While Tennessee courts have been hesitant to provide a precise definition of a "confidential relationship," this Court has said that it generally includes "any relationship of trust and confidence which gives one party dominion or influence over the other." *Gibson*, 2004 Tenn. App. LEXIS 722, at *13 (citing *Mitchell*, 779 S.W.2d at 389; *Williamson v. Upchurch*, 768 S.W.2d 265, 269 (Tenn. Ct. App. 1988)). More specifically, "a confidential relationship is one 'where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party." *Id.* (quoting *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973); and citing *Mitchell*, 779 S.W.2d at 389; *Williamson*, 768 S.W.2d at 269).

Appellants argue that, by virtue of the fact that Appellee cared for Decedent in the last years of his life, a confidential relationship existed between Appellee and Decedent. We disagree. Under the circumstances of this case, we cannot say that a confidential relationship existed between Appellee and Decedent. There is no evidence that Appellee had a confidential relationship in so far as Decedent's financial affairs; rather, the testimony reveals that Appellee was more of a housekeeper and long-time friend. Such circumstances alone do not create a confidential relationship for purposes of establishing undue influence. *See In re Thompson*, No. 01-A-01-9801-CH-00044, 1998 Tenn. App. LEXIS 639, at *14-15 (Tenn. Ct. App. Sept. 23, 1998) (concluding that a relationship between decedent and beneficiary, acting as a housekeeper and friend to decedent, did not meet the definition of "confidential relationship"). Although Decedent was of advanced age and experiencing physical health problems, the evidence does not establish that such problems acted to destroy Decedent's free agency. *See Gibson*, 2004 Tenn. App. LEXIS 722, at *17.

Appellants insist that other suspicious circumstances exist to establish that Appellee exercised undue influence over Decedent when he executed his Will. Again, we disagree with Appellants' assessment of the evidence. While Appellee and her niece, Smith, picked up the May 2002 Will from Hartsfield's office, both the May 2001 Will and the May 2002 Will were drawn up by Hartsfield upon Decedent's request. Additionally, Hartsfield stated that the Wills were the result of ongoing discussions with Decedent and that Decedent's expressed intention was that Appellee should receive his estate after his death rather than Appellants. Though the contents of Decedent's May 2001 Will and May 2002 Will were unknown to Appellants, there is no evidence that Decedent wished to keep the Wills a secret. Further, Hartsfield testified that, although he did not meet with Decedent face-to-face before execution of the May 2002 Will, he did meet in his office with Decedent before the execution of the May 2001 Will, which was identical to the May 2002 Will. Additionally, Hartsfield stated that he spoke with Decedent over the phone before the execution of the May 2002 Will and determined that Decedent was not confused and was exercising his free will. There is no evidence that Decedent was emotionally distraught or subjected to fraud or duress by Appellee. In addition, the disposition of Decedent's property in his Will matches his expressed intentions according to the testimony of Hartsfield and Decedent's nephew, Howard William.

-4-

Finally, this Court has previously noted that "[i]t is not unusual for a testator to change his will to benefit an individual who has helped him during his declining years." *In re Thompson*, 1998 Tenn. App. LEXIS 639, at *11.

> Influence arising from mere acts of kindness, attention, and congenial intercourse which operate to secure or retain the affection, esteem, or good will of the testator, and induce him to make the persons performing such kindly offices beneficiaries in his will, do not constitute undue influence, unless such acts are carried out with the purpose and design of subjecting the mind of the testator to the influence and the direction of the person exercising the influence, and thus deprive the testator of his free will, free act, and free agency.

*In re Estate of Depriest*, 733 S.W.2d 74, 78 (Tenn. Ct. App. 1986) (quoting 94 C.J.S. *Wills* § 227); *see also In re Thompson*, 1998 Tenn. App. LEXIS 639, at *11-12. Appellee cared for Decedent in the last years of his life and lived with Decedent for a very long time. We cannot say that the terms of Decedent's Will, devising his entire estate to Appellee rather than to his children who visited him sporadically at best, are unjust or unnatural. For these reasons, we affirm the decision of the trial court.

### Conclusion

For the reasons stated above, we affirm the decision of the trial court finding that EddieHue Morris Branch's Last Will and Testament was not the product of undue influence. Costs of this appeal are taxed to Appellants, Eddie Morris Branch, Jr., William Taylor Branch, Bruce Branch, and Paula Freeman, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE